UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRIS HURON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:23-CV-56-HAB |
| ) | |
| MARTIN J. O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Chris Huron's ("Huron") appeal of the Social Security Administration's Decision dated May 4, 2022 (the "Decision").  Huron filed his Complaint against the Commissioner of Social Security (ECF No. 1) on January 25, 2023. Huron filed his Opening Brief (ECF No.11) on June 19, 2023.  Defendant Martin J. O'Malley, Commissioner of Social Security (the "Commissioner") filed his Memorandum in Support of Commissioner's Decision (ECF No. 18) on September 29, 2023. Huron filed his reply (ECF No. 21) on November 22, 2023.  This matter is now ripe for determination.

**ANALYSIS**

*Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court.  This Court must affirm the ALJ's  decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would

accept as adequate to support the decision*." Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

***The ALJ's Decision***

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled.

Here, the ALJ found at step one that Huron did not engage in substantial gainful activity since November 21, 2020, which was his application date. At step 2, the ALJ determined that Huron had the following severe impairments: PTSD, obstructive sleep apnea, and diabetes with

3

peripheral neuropathy.

At step three, the ALJ found that Huron did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)"." (R. 17). At step four, the ALJ found that Huron had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 416.967(c) except he can handle and finger items frequently with both hands; can frequently climb ramps, stairs, ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, and crawl; is able to perform simple, routine tasks; is able to perform simple work related decisions; is able to occasionally interact with coworkers, supervisors, and the public; and is able to make simple work related decisions.

(R.15).

Also at step four, the ALJ determined that Huron was capable of his performing past relevant work as a production assembler. Therefore, the ALJ found that Huron was not disabled. (R. 18-19).

***The ALJ's Evaluation of Huron's Symptoms and Limitations***

Huron notes that he has a history of back, foot, abdominal, knee, mental health, and diabetes-related issues supported by medical evidence. He was involved in a serious car accident in 2019 resulting in injuries. Imaging showed abnormalities in his lumbar spine, hands, and cervical spine. Exams documented decreased sensation, obesity, gait abnormalities, and joint issues. Diagnoses included nerve pain, arthritis, and spinal fractures.

Huron takes issue with the ALJ's subjective symptom analysis, arguing that the ALJ

erroneously equated Huron's conservative treatment history with the lack of need for treatment, determined that Huron's exams were normal because he only had minimal symptoms, dismissed abnormal findings in medical exams based on his own opinion of treatment, and favored exams showing normal physiology.

With respect to Huron's conservative treatment history, Huron alleges that he had poor insurance and difficulty getting a therapist for his mental health issues. Plaintiff notes that he is low income and asserts that he could not afford treatments and medications. The Commissioner, however, points out that some of Huron's claims of lack of ability to pay for treatments rely on old records that predate his disability onset date by six years (R. 387-405). The Commissioner also notes that Huron testified at the hearing that he had health insurance, and that his difficulty with therapy was due to his inability to "open up" to anyone, not because of lack of insurance. (R. 41, 43). Huron argues in reply that his insurance was the Healthy Indiana Plan (HIP), a state-run insurance plan for low-income individuals who do not qualify for Medicaid or Medicare, and that the insurance is "not very good" and limits where he can obtain treatment.

Nevertheless, there is no evidence connecting Huron's alleged insurance problems with any lack of treatment. Additionally, Huron now claims in his reply that he did not argue that his insurance was the key barrier to obtaining a mental health therapist, but that his mental illness prevented him from seeking out a therapist. Huron argues that mental health struggles may be a valid explanation for the absence of mental health treatment, citing to *Kangail v. Barnhart*, 454 F.3d 627, 629-30 (7th Cir. 2006). While this is true, there must be some medical evidence of a mental impairment for it to be considered in a disability claim. As the ALJ discussed, the record shows no significant treatment for Huron's mental impairments after the protective filing date.

5

Huron apparently never pursued community counseling, he did not require inpatient mental health treatment, he did not present to the emergency department due to substance abuse, suicidal or homicidal ideation, or any other psychiatric symptoms. (R. 17).

Huron also argues that the ALJ erred in his analysis of Huron's treatment for his back. Huron notes that he was not a candidate for back surgery. Huron has a history of lumbar fractures, which the ALJ noted. (R. 12). The ALJ did not, as Plaintiff argues, suggest that Plaintiff's claims were meritless due to the fact that he did not have back surgery. Thus, this Court finds no error in the ALJ's evaluation of Huron's conservative treatment history.

Further, Huron argues that the ALJ erred in his consideration of the objective medical evidence. While Huron raises several contentions on this point (*i.e.*, no medical expert opinion and improper weight given to normal findings), the contention of merit is that the ALJ relied on his own interpretation of medical evidence. Huron points to several instances of the ALJ applying his own interpretation of the evidence. The ALJ found Huron's diabetic polyneuropathy less limiting than alleged despite exams showing decreased sensation in the feet. The ALJ characterized these findings as "mild", even though the medical records the ALJ cited to did not describe the symptoms as mild. Both the ALJ and the Commissioner cite to Exhibits 4F and 5F to support the contention that Huron's neuropathy was mild. Neither provide the Court with pinpoint citations, even though Exhibit 4F is 134 pages long and Exhibit 5F is 83 pages long. The Court reviewed all the pages of Exhibits 4F and 5F and did not find any mention of Huron's neuropathy as being mild. However, his neuropathy was repeatedly mentioned in these exhibits as being an active problem. (R. 517, 541, 542, 545, 664, 666, 675, 682, 683, 702, 704, 728, 729).

The ALJ also rejected the severity of Huron's hand issues despite exams documenting

6

abnormalities in the hands and fingers. (R. 281-82, 571-75, 682-686, 730-32). The ALJ failed to discuss the medical records which showed Huron has moderate multi-articular osteoarthritis, an incurable disease characterized as damaged cartilage in the joints. The ALJ's failure to comply with agency regulations and to explain the bases for his conclusions justifies remand. As the ALJ applied his own interpretation of the medical evidence, remand is warranted on this issue.

### *The ALJ's Assessment of Huron's RFC*

Huron further argues that the ALJ erred in the RFC assessment. Huron contends that the RFC is not tied to any specific evidence and is also not supported by substantial evidence. The ALJ concluded that Huron is capable of medium work, which requires standing or walking six hours a day and lifting up to 50 pounds. Huron argues that the ALJ failed to explain how the evidence supports a conclusion that he could perform medium work for eight hours a day, five days a week. Huron reiterates that he suffers from diabetic polyneuropathy, which limits his ability to stand. Huron also suffers from lumbar spine issues, cervical spine problems, hand issues such as moderate multi-articular osteoarthritis, tenosynovitis in his wrist, and arthropathy in the fingers and knuckles of both hands. The Court agrees that the ALJ failed to explain how Huron could stand or walk six hours a day or lift up to 50 pounds, with his limitations that are supported in the record. The Commissioner reiterates the ALJ's RFC discussion and deems it significant "that the treatment records otherwise showed only mild findings related to Plaintiff's feet". (Response at 4, referring to the Decision at R.17). However, as noted above, the evidence cited by the ALJ (Exhibits 4F and 5F) do not support the conclusion that Huron's neuropathy was only mild. Thus, this Court finds that the ALJ's RFC assessment is not supported by substantial evidence and remand is required on

7

this issue as well.  *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 774-75 (7th Cir. 2022).

## CONCLUSION

For the forgoing reasons, the Decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.  The Clerk is DIRECTED to enter judgment in favor of Plaintiff and against the Defendant.

SO ORDERED on February 22, 2024.

s/ Holly A. Brady  
HOLLY A. BRADY, CHIEF JUDGE  
UNITED STATES DISTRICT COURT
